IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SHANNON K.,<br><br>             Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>             Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 4:18-cv-00079-PK<br><br>Magistrate Judge Paul Kohler |

      This matter comes before the Court on Plaintiff Shannon K.'s appeal from the decision of the Social Security Administration denying her application for supplemental security income. The Court held oral arguments on July 10, 2019. Having considered the arguments of the parties, reviewed the record and relevant case law, and being otherwise fully informed, the Court will affirm the administrative ruling.

## I. STANDARD OF REVIEW

      This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II.  BACKGROUND

### A.    PROCEDURAL HISTORY

On February 4, 2015, Plaintiff filed an application for supplemental security income, alleging disability beginning on January 30, 2015.[7] The claim was denied initially and upon reconsideration.   Plaintiff then requested a hearing before an ALJ, which was held on July 13, 2017.[8] The ALJ issued a decision on September 18, 2017, finding that Plaintiff was not disabled.[9] The Appeals Council denied Plaintiff's request for review on October 10, 2018,[10] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[11]

On November 14, 2018, Plaintiff filed her complaint in this case.[12] The Commissioner filed his answer and the administrative record on February 26, 2019.[13] On February 28, 2019,

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] R. at 166–76.

[8] *Id.* at 35–76.

[9] *Id.* at 12–34.

[10] *Id.* at 1–6.

[11] 20 C.F.R. § 422.210(a).

[12] Docket No. 3.

[13] Docket Nos. 8, 9.

both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[14]  Consequently, this case was assigned to Magistrate Judge Kohler pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.[15]

Plaintiff filed her Opening Brief on April 23, 2019.[16]  Defendant filed his Answer Brief on May 24, 2019.[17]  Plaintiff filed her Reply Brief on June 6, 2019.[18]

B.     MEDICAL HISTORY

The following medical history is relevant to the issues raised in Plaintiff's Opening Brief.

1.     *Cardiac Issues*

Plaintiff has a history of hypertension and high cholesterol for which she was receiving treatment and taking medication.  On September 9, 2014, Plaintiff complained of tightness in her chest.[19]  While Plaintiff stated that it hurt to take a deep breath, she did not feel short of breath or that she could not catch her breath.[20]  A treatment note from June 23, 2015, indicated that Plaintiff had experienced panic attacks in the past, along with shortness of breath and chest pains.[21]  On October 22, 2015, Plaintiff denied shortness of breath or chest pain.[22]

---

[14] Docket No. 13.

[15] Docket No. 17.

[16] Docket No. 18.

[17] Docket No. 20.

[18] Docket No. 21.

[19] R. at 278.

[20] *Id.*

[21] *Id.* at 484.

[22] *Id.* at 707.

On September 15, 2016, Plaintiff reported having chest pain and swelling in her ankles.[23] Plaintiff was referred to a cardiologist, Aarush Manchanda, M.D.[24]

On November 1, 2016, Plaintiff was seen by Dr. Manchanda. Plaintiff complained of chest pain, edema, shortness of breath, and hypertension.[25] Dr. Manchanda ordered testing be done.[26]

On January 24, 2017, Plaintiff was again seen by Dr. Manchanda to go over her testing. The imaging results were largely normal.[27] Dr. Manchanda diagnosed high blood pressure and inappropriate sinus tachycardia.[28] Dr. Manchanda changed Plaintiff to a different medication.

On February 9, 2017, Plaintiff was noted by Dr. Manchanda as having "rebound hypertension and tachycardia."[29] She was also diagnosed with diastolic congestive heart failure.[30] As a result, her medication was increased.[31] In June 2017, Plaintiff stated that she continued to take this medication.[32]

---

[23] *Id.* at 666–67.

[24] *Id.* at 669.

[25] *Id.* at 543.

[26] *Id.*

[27] *Id.* at 540–41; *see also id.* at 649.

[28] *Id.* at 541.

[29] *Id.* at 537.

[30] *Id.* at 538.

[31] *Id.* at 537.

[32] *Id.* at 254.

## 2. Mental Health Issues

Plaintiff has a history of depression and anxiety. Plaintiff was treated by, among others, Jamie Cox, an advanced practice registered nurse ("APRN"). In July 2015, Ms. Cox wrote a letter stating that she did not consider Plaintiff to be completely mentally or physically disabled.[33] With respect to her mental impairments, Ms. Cox stated that "[b]ehavioral and psychological functions related to her ability to work are slightly impaired."[34] Ms. Cox opined that Plaintiff could maintain attention and concentration for two hours at a time, though she might experience increased anxiety while doing so.[35] Ms. Cox further stated that Plaintiff could perform activities within a routine schedule.[36] "However, she has shown a history to be tardy or miss work due to her anxiety and depression that does worsen with customer and management interaction."[37] Ms. Cox believed "that with proper medical and lifestyle modification and management her symptoms can be controlled and she can have an improved quality of life."[38]

## C. HEARING TESTIMONY

At the hearing, Plaintiff testified that she lived with her husband, two of her children, and her father.[39] She stated that she helped her father by writing things for him and reading to him.[40]

---

[33] *Id.* at 474.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 39.

[40] *Id.* at 40.

She has a GED and attended some college classes.[41]  She has CNA and CPR certifications.[42]

She has previous work as a CNA, telemarketer, housekeeper, and fast food worker.[43]

In January 2015, Plaintiff started having pain in her back, hips, and legs.[44]  She also started having problems with anxiety and depression.[45]  Plaintiff stated that she drives once or twice a week.[46]  She is able to go to the grocery store and remain there for about an hour.[47]  She is able to do some household chores, but experiences difficulty due to her back pain.[48]

Plaintiff testified that her depression causes her to sit in her room and cry and wish she were dead, but she denied ever attempting to harm herself.[49]  She also stated that she gets angry and lashes out, which has caused problems in her relationships.[50]  Plaintiff stated that she rarely leaves the house because she thinks everyone is staring at her and judging her, and that she has broken down and cried while out.[51]  Plaintiff takes medication for her depression and anxiety.[52]

---

[41] *Id.* at 41.

[42] *Id.*

[43] *Id.* at 42–46.

[44] *Id.* at 50.

[45] *Id.* at 51.

[46] *Id.* at 55.

[47] *Id.*

[48] *Id.* at 57–60.

[49] *Id.* at 64.

[50] *Id.*

[51] *Id.* at 65.

[52] *Id.* at 68.

At the hearing, the ALJ provided the vocational expert with a hypothetical question.[53]  In response, the vocational expert opined that the hypothetical person could perform work as a hand laborer, light-duty cleaner, office clerk, auditing clerk, office clerk, and surveillance systems monitor.[54]

D.     THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 3, 2015, the application date.[55]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: anxiety related disorders, affective disorders, personality disorder, disorder of the lumbar spine and hips, and obesity.[56]   At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[57]  At step four, the ALJ determined that Plaintiff could not perform her past relevant work.[58]  At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[59]

---

[53] *Id.* at 73.

[54] *Id.* at 73–74.  The two office clerk positions are found at different locations in the Dictionary of Occupational Titles.

[55] *Id.* at 17.

[56] *Id.*

[57] *Id.* at 18–19.

[58] *Id.* at 29.

[59] *Id.* at 29–30.

### III.  DISCUSSION

Plaintiff raises the following issues in her brief: (1) whether the ALJ erred in his evaluation of Plaintiff's cardiac issues; and (2) whether the ALJ erred in his evaluation of the medical opinion evidence.

### A.    CARDIAC ISSUES

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment.  Here, the ALJ found that Plaintiff had the following severe impairments: anxiety related disorders, affective disorders, personality disorder, disorder of the lumbar spine and hips, and obesity.[60]  Plaintiff argues that the ALJ erred in failing to find Plaintiff's cardiac issues to be severe impairments.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[61]  A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis.[62]  However, "a showing of the mere presence of a condition is not sufficient."[63]  Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[64]  "If the claimant is unable to show that [her] impairments would

---

[60] *Id.* at 17.

[61] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[62] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[63] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[64] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

have more than a minimal effect on [her] ability to do basic work activities, [s]he is not eligible for disability benefits."[65]

As stated, Plaintiff argues that the ALJ erred in failing to find her cardiac issues to be severe impairments. The medical evidence related to Plaintiff's cardiac issues is sparse. She has a history of hypertension and high cholesterol. She has also been diagnosed with tachycardia and diastolic congestive heart failure. Plaintiff has been prescribed and was taking medication for all of these conditions. However, there is no evidence in the record to indicate that Plaintiff's cardiac issues significantly limit her ability to do basic work activities. Tellingly, Plaintiff did not list any cardiac issues as limiting her ability to work[66] and did not testify as to any of her cardiac issues at the hearing before the ALJ.

Plaintiff argues that shortness of breath and fatigue "would limit [Plaintiff]'s ability to consistently perform light work as found by the ALJ."[67] While this may be true in certain circumstances, there is no evidence in the record that Plaintiff's cardiac issues significantly limited her ability to do work activities. At most, Plaintiff has shown the mere presence of a condition, which is not sufficient under step two.

The fact that these issues were not severe impairments does not end the inquiry. In assessing a claimant's residual functional capacity, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not."[68] Here, in determining

---

[65] *Id.*

[66] R. at 189.

[67] Docket No. 21, at 2.

[68] *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).

Plaintiff's residual functional capacity, the ALJ stated that he "considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere" and concluded that "[t]he evidence does not support a finding of any additional functional limitations."[69] The ALJ went on to thoroughly discuss Plaintiff's medical history, including her cardiac issues.[70] From this, the Court concludes that the ALJ did consider Plaintiff's cardiac issues in determining Plaintiff's residual functional capacity.[71] Because there is no evidence that Plaintiff's cardiac issues support a finding of functional limitations, the Court finds that the ALJ's conclusion in that regard is supported by substantial evidence. Therefore, reversal is not required on this ground.

B.      MEDICAL OPINION EVIDENCE

An ALJ must review every medical opinion.[72] In reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[73] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[74] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent

---

[69] R. at 18.

[70] *Id.* at 24.

[71] *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at [his] word.") (internal quotation marks omitted).

[72] 20 C.F.R. § 404.1527(c).

[73] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[74] *Id.*

with other substantial evidence in the record.[75]  If these conditions are not met, the treating

physician's opinion is not entitled to controlling weight.[76]

This does not end the analysis, however.  Even if a physician's opinion is not entitled to

controlling weight, that opinion must still be evaluated using certain factors.[77]  Those factors

include:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment provided
> and the kind of examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence; (4) consistency between the
> opinion and the record as a whole; (5) whether or not the physician is a specialist
> in the area upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.[78]

After considering these factors, the ALJ must give good reasons for the weight he ultimately

assigns the opinion.[79]  If the ALJ rejects the opinion completely, he must give specific,

legitimate reasons for doing so.[80]

In July 2015, Jamie Cox, APRN, submitted a letter opining as to Plaintiff's mental

limitations.  Ms. Cox had been treating Plaintiff since 2014.  Relevant here, Ms. Cox stated that

Plaintiff could maintain attention and concentration for two hours at a time, though she might

experience increased anxiety while doing so.[81]  Ms. Cox further stated that Plaintiff could

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[79] *Id.*

[80] *Id.*

[81] R. at 474.

perform activities within a routine schedule.[82]  "However, she has shown a history to be tardy or miss work due to her anxiety and depression that does worsen with customer and management interaction."[83]

The ALJ gave significant weight to Ms. Cox's opinion.[84]  Accordingly, in the ALJ's residual functional capacity analysis, the ALJ included many of the limitations included in Ms. Cox's letter.  The ALJ stated that Plaintiff "is limited to the performance of simple tasks typical of unskilled occupations with no production rate pace work, only occasional interaction with coworkers and no interaction with the public."[85]  However, the ALJ did not include any limitations based on Plaintiff's potential problems with management.  Plaintiff argues that the failure to include any limitations on management interaction was error.[86]  Defendant concedes that it was error for the ALJ to either not include this limitation or explain why it was not included.[87]

Defendant nevertheless argues that any error was harmless.  Defendant argues that even including the additional limitation identified by Ms. Cox, Plaintiff could still perform a significant number of jobs.  Defendant argues that certain of the jobs identified by the vocational expert and the ALJ only require "not significant" "taking instructions-helping."[88]  Because of

---

[82] *Id.*

[83] *Id.*

[84] *Id.* at 26.

[85] *Id.* at 20.

[86] Docket No. 18, at 10.

[87] Docket No. 20, at 8.

[88] *Id.* at 9.

this, interaction with management would be minimal. Therefore, Defendant argues that Plaintiff can still perform the jobs of hand laborer, light duty cleaning, auditing clerk, and office clerk, which represent over 500,000 jobs in the national economy.

The Court may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[89] "In conducting our review, we should, indeed must, exercise common sense."[90]

The Tenth Circuit addressed a similar factual scenario to the one before the Court in *Lane v. Colvin*.[91] There, as here, the plaintiff argued that the ALJ failed to account for one of her limitations in determining her residual functional capacity.[92] Like Plaintiff here, there was medical opinion evidence that the plaintiff in that case could "only accept supervision and interact with co-workers if the contact is not frequent or prolonged."[93] However, the ALJ did not include such a limitation in his residual functional capacity and hypothetical questions to the vocational expert.[94] The Tenth Circuit held that any error was harmless.

The *Lane* court examined the job (bottling-line attendant) that the vocational expert testified the plaintiff could perform. Reviewing the Dictionary of Occupational Titles, the court noted that taking instruction or helping was not significant and the activity of talking was not

---

[89] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[90] *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

[91] 643 F. App'x 766 (10th Cir. 2016). While *Lane* is an unpublished decision, the Court finds its reasoning persuasive.

[92] *Id.* at 767.

[93] *Id.* at 768.

[94] *Id.*

present.[95]  "Thus, the job of bottling attendant does not involve frequent or prolonged interaction with supervisors or co-workers."[96]  Based upon this, the court found "no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error."[97]

Though a close question, the Court finds the reasoning in *Lane* persuasive and concludes the same result is warranted here.  The vocational expert and the ALJ identified the following jobs:  hand laborer, light-duty cleaning, office clerk, auditing clerk, office clerk, and surveillance systems monitor.[98]  Like the job at issue in *Lane*, the Dictionary of Occupational Titles provides that the jobs of hand laborer,[99] light duty cleaning,[100] auditing clerk,[101] and office clerk[102] have "not significant" taking instructions or helping and the activity of talking is not present.  Thus, these jobs do not involve frequent or prolonged interaction with supervisors and there is no conflict between the limitation identified by Ms. Cox and the jobs identified by the vocational expert.  Between these four types of jobs, there are over 500,000 jobs in the national economy

---

[95] *Id.* at 770.

[96] *Id.*

[97] *Id.*

[98] R. at 30.

[99] DOT No. 922.587-010, 1991 WL 688113.

[100] DOT No. 389.697-010, 1991 WL 673281.

[101] DOT No. 219.587-010, 1991 WL 671989.

[102] DOT No. 249.587-014, 1991 WL 672348.

Plaintiff could perform.  This is legally sufficient.[103]  Therefore, the ALJ's error in failing to address this limitation is harmless.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court hereby AFFIRMS the decision below.

DATED this 25th day of July, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[103] *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding 152,000 jobs in the national economy sufficient).